UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| YEISON YAHYR QUIMBAYA LOPEZ, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>BRISON SWEARINGEN, )<br>SAMUEL OLSON, )<br>KRISTI NOEM, )<br>TODD M. LYONS, )<br>PAM BONDI, )<br>)<br>Respondents. ) | No. 2:26-cv-00092-JRS-MJD |

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Yeison Yahyr Quimbaya Lopez seeks a writ of habeas corpus requiring that he be immediately released from U.S. Immigration and Customs Enforcement ("ICE") detention. Dkt. 1 at 14. Because the undisputed facts demonstrate that Mr. Quimbaya Lopez is statutorily eligible for a bond hearing, the Court **grants in part** his petition to the extent that, by **March 23, 2026**, Respondents afford him a bond hearing or release him from detention under reasonable conditions of supervision.

I. **Background**

Mr. Quimbaya Lopez is a citizen of Colombia who entered the United States around March 9, 2024. Dkt. 1-6 (Notice to Appear). Mr. Quimbaya Lopez was arrested by federal immigration officials near Calexico, California and processed as an expedited removal under 8 U.S.C. §

1

1225(b)(1). *Id.*; dkt. 5 at 2. At some point, Mr. Quimbaya Lopez was paroled into the United States. Dkt. 5 at 3 n.1. [1] However, his parole expired on April 5, 2025. *Id.*

A year before the parole expired, on April 23, 2024, Department of Homeland Security ("DHS") served Mr. Quimbaya Lopez with a Notice to Appear for full immigration proceedings pursuant to Section 240 of the Immigration and Nationality Act ("INA"). Dkt. 1-6 at 2. The Notice to Appear states that Mr. Quimbaya Lopez is subject to removal under § 212(a)(6)(A)(i) of the INA because he was "not then admitted or paroled after inspection by an Immigration Officer." *Id.* The "arriving alien" box is unmarked. The Notice was issued after "an asylum officer [] found that the respondent has demonstrated a credible gear of persecution or torture." *Id.*

Mr. Quimbaya Lopez has since applied for asylum and his application remains pending. Dkt. 1-5. After his release from immigration detention in 2024, Mr. Quimbaya Lopez has communicated with Immigration and Customs Enforcement ("ICE") weekly. Dkt. 1 ¶ 19. Nevertheless, on January 29, 2026, he failed to appear for an appointment due to medical issues. *Id.* On February 3, he went to the ICE office where an officer immediately detained him. *Id.* ICE officers served Mr. Quimbaya Lopez with a Warrant for Arrest (Form I-200). Dkt. 5 at 3. This warrant authorizes immigration agents to take aliens into custody under 8 U.S.C. § 1226. At some point, Mr. Quimbaya Lopez was transferred to Clay County Jail in Brazil, Indiana, where he remains detained.

## II.     Discussion

Mr. Quimbaya Lopez claims that his current detention without an individualized determination of his facts and circumstances violates the Due Process Clause of the Fifth

---

[1] Neither party included evidence of Mr. Quimbaya Lopez's parole or other immigration documents such as his Form I-213 or Form I-200. Because the merits of the petition do not depend on whether Mr. Quimbaya Lopez is or was on parole, the Court will proceed without ordering the parties to supplement their filings.

Amendment (Count I); and the INA and its accompanying regulations (Counts II and III). Dkt. 1 ¶¶ 40–51. Respondents argue that Mr. Quimbaya Lopez is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and that his detention is constitutional. Dkt. 5.

The Court finds that Mr. Quimbaya Lopez's detention is governed by § 1226(a) and that it is unlawful because he has not been afforded a bond hearing. Because Mr. Quimbaya Lopez is entitled to habeas corpus relief on these grounds, the Court does not address his other arguments.

### A. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on—
> >
> > > (A) bond . . . ; or
> > >
> > > (B) conditional parole . . ..

3

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether

4

or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### B. Mr. Quimbaya Lopez Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

The Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than unadmitted aliens like Mr. Quimbaya Lopez who are "present" in the United States after having lived within the country. *See Morales Sandoval v. Crowley*, No. 2:25-cv-00560-JRS-MKK, 2025 WL 3760760, *3-6 (S.D. Ind. Dec. 30, 2026); *see also Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029424, *3-5 (S.D. Ind. Oct. 30, 2025). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.[2] *See, e.g., Alejandro*, 2025 WL 2896348, at *14-19.

The Respondents cite a recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." Dkt. 5 at 10; *Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *5 (5th Cir. Feb, 6, 2026) ("The Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the

---

[2] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply in *Morales Sandoval*, 2025 WL 3760760, *3-6.

shortcomings of human communication' . . . . That seems doubly true where the ordinary meaning of the terms involved overlap. Because being an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably.") (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)). Even if the terms do refer to different criteria, the Fifth Circuit found that petitioners such as Mr. Quimbaya Lopez can be said to be "seeking admission" even though they have resided within the country and are not affirmatively seeking to enter the United States. *Id.*

The Fifth Circuit's decision is neither binding nor persuasive on this Court. This Court continues to defer to the Seventh Circuit's recent interpretation of the statute, which finds that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[3]

Second, even if the Respondents' legal reasoning was more persuasive, it could not be reconciled with the government's treatment of Mr. Quimbaya Lopez. *See* dkt. 5 at 2–3. In March of 2024, federal agents arrested Mr. Quimbaya Lopez near the U.S.-Mexican border in Calexico and processed him as an expedited removal under § 1225(b)(1). Then, after an asylum officer found that he possessed a credible fear of returning to Colombia, he was released on parole and served a Notice to Appear in full removal proceedings—not expedited removal proceedings. Almost a year after Mr. Quimbaya Lopez's parole expired in April of 2025, he was arrested again inside the United States pursuant to an administrative warrant that explicitly authorized his

---

[3] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

detention under § 1226. These facts distinguish his petition from the petitioners in *Buenrostro-Mendez*, where the court's analysis did not indicate that the petitioners were arrested pursuant to an administrative warrant and then served with a Notice to Appear for full removal proceedings. *See Buenrostro-Mendez*, 2026 WL 323330, at *3 ("DHS encountered each petitioner in 2025, and, upon inspection, immigration officers determined that each was inadmissible as an alien present in the United States without having been admitted or paroled . . . DHS commenced removal proceedings under 8 U.S.C. § 1229a against both petitioners, directing that they be detained under 8 U.S.C. § 1225(b)(2)(A) for the duration of those proceedings."). These facts are also quite different from the facts presented in *Cruz Rodriguez v. Olson*, No. 1:25-cv-12961, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026), which Respondents briefly reference. Unlike Mr. Cruz Rodriguez, who was subjected to a warrantless arrest, Mr. Quimbaya Lopez was served with an administrative warrant that authorized federal agents to detain him pursuant to § 1226. *Buenrostro-Mendez* and *Cruz Rodriguez* therefore do not necessarily apply to the facts here.

Given the government's treatment of Mr. Quimbaya Lopez, it cannot plausibly now maintain that he is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release. *Singh*, 2025 WL 3029524, at *6 (citing *Patel v. Crowley*, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *Valencia Zapata v. Kaiser*, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their own recognizance under section 1226(a).").

By detaining Mr. Quimbaya Lopez and depriving him of any consideration of bond, the government has kept him in custody in violation of the INA. As a result, he is entitled to a writ of habeas corpus.

### III. Scope of Relief

Mr. Quimbaya Lopez asks the Court to order his immediate release. Dkt. 1 at 14. Immediate release is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Mr. Quimbaya Lopez's immediate release and instead first orders Respondents to provide him with a bond hearing. Any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Quimbaya Lopez maintains—and the Court agrees—that his detention without consideration of bond is contrary to law because his detention is authorized by § 1226(a). *See* dkt. 10 at 2–3 ("However, Petitioner asserts that his detention is appropriate under § 1226(a). Detention under § 1226(a), entitles Petitioner to a bond hearing."). Detention under § 1226(a) makes Mr. Quimbaya Lopez eligible for discretionary release but also allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Quimbaya Lopez's custody is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful only to the extent the government refuses to consider whether he may be released as the law requires.

Mr. Quimbaya Lopez also seeks prospective relief from re-detention. The Court can only grant relief related to Mr. Quimbaya Lopez's current custody; it cannot grant relief from future re-

detention. If Mr. Quimbaya Lopez is re-detained, then he can bring another petition for writ of habeas corpus, challenging the lawfulness of that custody.

IV. **Conclusion**

The Court **grants in part** the petition to the extent that no later than **5:00 p.m. on March 23, 2026**, Respondents must either: (1) provide Mr. Quimbaya Lopez with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Quimbaya Lopez from custody, under reasonable conditions of supervision. No later than **12:00 p.m. on March 26, 2026**, Respondents must file documentation certifying that they have provided Mr. Quimbaya Lopez with a bond hearing, including apprising the Court of the results of the hearing. If Respondents release Mr. Quimbaya Lopez, then they must file documentation certifying his release. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date:  3/16/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Afshan Jabeen Khan
Law Office of Afshan J Khan
ajkhanesq@gmail.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov